**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Wendall NICHOLSON, Defendant–Appellant.**

**No. 92–3083.**

United States Court of Appeals, Tenth Circuit.

Jan. 5, 1993.

---

984

and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Defendant argues that (1) heroin and other evidence presented at trial was obtained as the result of an illegal detention, and should have been suppressed; (2) the district court prejudiced his defense by advancing the trial date six days; (3) the evidence adduced at trial was insufficient to support the convictions; (4) the district court improperly admitted hearsay under the co-conspirator exception of Fed.R.Evid. 801(d)(2)(E); (5) the district court should have given his proposed jury instruction concerning testimony of admitted addicts; and (6) the cumulative effect of these errors, even if not themselves sufficient to warrant reversal, denied him due process.

I

Defendant was arrested as a result of a Drug Enforcement Agency (DEA) investigation into heroin trafficking in Wichita, Kansas. Detective Bruce Watts of the Wichita Police Department, assigned to a DEA task force, testified that the primary target of the investigation was Johnnie Davis, who was suspected of being a large-scale heroin distributor. With the help of informant Ronnie Williams, a convicted felon and recovering heroin addict, Watts conducted a number of controlled buys from Davis, in which the DEA gave Williams money, Williams purchased heroin from Davis, and the narcotics were turned over to the DEA for use as evidence.

Williams also told Watts that defendant was a multi-ounce heroin dealer, and that defendant bought his heroin from Davis. Williams stated that he had purchased heroin from defendant on a number of occasions. In late 1990, Detective Morse of the Wichita Police Department conducted a controlled buy from defendant. One call from Williams to Davis to set up a controlled buy was recorded by the DEA. In the course of the conversation, Williams indicated that he wanted a "half." Davis responded that "[y]ou probably better find Wendall then." II R. at 304. Williams understood this statement to mean that if he did not want to purchase more than

Daniel E. Monnat of Monnat & Spurrier, Wichita, KS, for defendant-appellant.

D. Blair Watson, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., with him on the brief), Wichita, KS, for plaintiff-appellee.

Before LOGAN, TACHA and EBEL, Circuit Judges.

LOGAN, Circuit Judge.

Defendant Wendall Nicholson appeals his convictions for conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and for carrying a firearm during

$500 worth of heroin, he would have to buy it from defendant. Williams then told Davis that he wanted half an ounce, not half a gram, and Davis agreed to meet with him.[1]

On March 12, 1991, Watts set up another controlled buy between Williams and Davis. Even though the transaction occurred near a local grocery store, DEA agents maintained surveillance on Davis' home, "to see Mr. Davis come and go during the transactions." I R. at 189. After the deal was completed, other agents followed Davis, who returned to his residence. Soon after Davis arrived home, the surveilling agents reported over the radio that a black and silver Cadillac with dealer license plates had parked in front of Davis' house, and that a black male had gone inside. A few minutes later, the individual left the house and drove away. At this time Williams and Watts were in the DEA office with the radio on, and Williams told Watts that the Cadillac might be defendant's. Further, Watts and another agent testified that they had seen defendant driving this car on prior occasions.[2] Concluding that the individual in the Cadillac was probably defendant, Watts requested that the Wichita police department stop the car, which it did.

After stopping the car, Officer Phillip Smith of the Wichita police asked for defendant's license and told him that he was being stopped at the request of the highway patrol.[3] Defendant told Smith that he was dropping off some documents at the attorney's office in whose parking lot they had stopped. Smith asked defendant for permission to search the vehicle, which defendant granted orally. Smith also asked defendant to sign a written consent form, and defendant accompanied Smith to the patrol car to execute the waiver. A second officer, Gerald Dickerson, then went to defendant's car, and observed a grey plastic film canister on the front seat. He retrieved it, opened the lid, and saw a number of small plastic baggies with a powdery substance in them. Dickerson replaced the lid and put the canister back on the seat. At that point, members of the DEA task force arrived and took over the search.

The DEA made no further search of the vehicle at the scene, but drove it to their headquarters, where a complete search was conducted. The agents discovered, in addition to the substance in the film canister, a loaded .357 Smith & Wesson revolver under the driver's seat, a number of small Ziploc bags, and a large box of matchbooks. Although defendant was taken to DEA headquarters, he was not charged that day. Four months later, DEA agents arrested defendant and charged him with conspiracy to distribute heroin and with possession of a firearm during a drug trafficking crime.

At trial, the government offered the testimony of three former heroin addicts, all of whom claimed to have purchased heroin from defendant. Williams, one of the witnesses, stated that he had bought heroin from defendant in Davis' presence, and that on one occasion Davis had intervened when defendant refused to continue to be Williams' supplier. Williams also testified as to his understanding that Davis would only deal in quantities of $500 or more worth of heroin; for any amount less than that, the buyers were directed to defen-

---

1. Williams testified that half an ounce of heroin cost $1100, exceeding the $500 "threshold" imposed by Davis.

2. Williams testified that defendant's routine was to borrow a car from his father's used car lot, purchase the meat needed that day for the family restaurant, and then buy heroin from Davis. Defendant places great weight on the fact that the Cadillac driven by defendant on March 12 could not have been driven by defendant on earlier occasions, because the car had been sold and was off the lot from September 6, 1990, to March 3, 1991, when it was repossessed. The district court found, however, that the sightings relied upon by Watts and the other detective were not specific to that time period. It is true that on cross-examination during the suppression hearing Watts agreed with defense counsel's statement that Watts had seen the car on defendant's father's lot between September and March. However, the district court appears to have treated this as a misstatement, and we find no basis to conclude otherwise.

3. This does not appear to have been a deliberate deception by the officer; he believed at the time that the stop had been requested by the highway patrol.

dant. The government offered the recorded telephone conversation to corroborate this claim.

Each of the former addicts testified that defendant would sell heroin in small Ziploc bags hidden inside matchbooks. Williams stated that, in the dozens of times he purchased heroin from defendant, it was always packaged in this fashion. Davis' house had been searched by the DEA, and a quantity of lactose was discovered, a substance often used to dilute heroin. A government chemist testified that both the heroin purchased by Williams from Davis during the controlled buys and the heroin seized from defendant's car had been diluted with lactose.

The jury convicted defendant on both the conspiracy and firearm counts. This appeal followed.

## II

■ A district court's denial of a motion to suppress evidence is reviewed under a clearly erroneous standard, and the evidence is considered in the light most favorable to the district court's ruling. *United States v. Horn,* 970 F.2d 728, 730 (10th Cir.1992); *United States v. Evans,* 937 F.2d 1534, 1536 (10th Cir.1991). The ultimate determination of reasonableness under the Fourth Amendment, however, as well as other conclusions of law, is reviewed de novo. *Horn,* 970 F.2d at 730; *United States v. Walker,* 933 F.2d 812, 815 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). If the district court's factual findings are based on an erroneous interpretation of law, a remand is appropriate unless the record is such that only one resolution of the factual issue is possible. *United States v. Price,* 925 F.2d 1268, 1270 (10th Cir.1991).

## A

■ To justify an investigative detention for questioning, the detaining officer must have a reasonable articulable suspicion that the detainee has been, is, or is about to be engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868,

1879–80, 20 L.Ed.2d 889 (1968); *United States v. Ward,* 961 F.2d 1526, 1529 (10th Cir.1992). The presence of reasonable suspicion is not determined by any one factor, but by the totality of the circumstances, *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990), and the detaining officer may rely on the representations of other law enforcement officials to form the basis of the suspicion. *United States v. Hensley,* 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985).

■ In this case, an individual was observed entering the house of a person from whom the DEA had just completed a controlled heroin purchase. The individual remained in the house only a few minutes. Given the description of the car and person by the officers on the scene, Agent Watts concluded that the driver might be defendant, who was suspected of drug trafficking. Based on the totality of the circumstances, Agent Watts had an objectively reasonable suspicion that the driver of the car was engaged in illegal activity, and was justified in requesting the Wichita police to detain the driver for identification and questioning.

This holding is consistent with numerous other cases from this circuit in which reasonable suspicion was found to exist. *See, e.g., United States v. Morgan,* 936 F.2d 1561, 1567–68 (10th Cir.1991) (officer knew that particular car had been seen leaving earlier robbery; knew that individual was a suspect; saw car, with suspect as passenger, soon after hearing report of robbery), *cert. denied,* — U.S. —, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992); *United States v. Gonzales,* 897 F.2d 504, 507 (10th Cir.1990) (border patrol agents received bulletin for car possibly carrying narcotics; defendant's car matched description; bulletin based on reliable informant); *United States v. Rutherford,* 824 F.2d 831, 833 (10th Cir.1987) (defendant arrived at suspected drug dealer's house emptyhanded; left ten minutes later carrying bag; police had prior information that large amounts of marijuana were in house); *United*

*States v. Romero,* 692 F.2d 699, 702 (10th Cir.1982) (two persons left suspected drug dealer's house carrying grocery sacks; one suspected of being dealer).

### B

■ The voluntariness of consent to search must be determined from the totality of the circumstances, and the government bears the burden of proof, without any presumption. *Price,* 925 F.2d at 1271. The district court found that defendant's consent was voluntarily given, and we must accept that finding unless it is clearly erroneous. *United States v. Wright,* 932 F.2d 868, 878 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991). Under the approach approved in *Price,* the government must show that there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given. *Price,* 925 F.2d at 1270.

■ The fact of defendant's detention is a factor to be considered in determining voluntariness, but it is not dispositive. Valid consent may be given by a person being detained. *United States v. Ramirez–Jiminez,* 967 F.2d 1321, 1324 (9th Cir.1992) (detention at border checkpoint; defendant not threatened, screamed at, or struck, and no evidence of psychological coercion); *see also United States v. Jackson,* 901 F.2d 83, 84 (7th Cir.1990) (defendant appeared outside occupied house with hands in pockets; officers sought permission to search pockets, never displayed weapons); *United States v. Moreno,* 897 F.2d 26, 33 (2d Cir.) (defendant apprehended in public area, not abused or threatened, no weapons displayed, consent requested after brief detention), *cert. denied,* 497 U.S. 1009, 110 S.Ct. 3250, 111 L.Ed.2d 760 (1990); *United States v. Garcia,* 866 F.2d 147, 152 (6th Cir.1989) (airport stop, two guards, no weapons displayed, no physical contact, no threatening by guards).

■ We cannot conclude that the district court's finding of voluntary consent was clearly erroneous. Although two officers were present, neither one displayed his weapon or employed an insisting tone or manner. The district court found that defendant was not confused or intimidated by the situation. Defendant gave both an oral and written consent, and assisted the officers by unlocking the doors of the car. Defendant does not contend that the search exceeded the scope of his consent. *See Florida v. Jimeno,* —— U.S. ——, ——, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991) (consent to a search of the car encompassed the search of closed containers).

### III

■ Defendant argues that the district court abused its discretion by advancing the trial date from December 16 to December 10, failing to notify defense counsel of the change until late in the afternoon on December 6, and denying defendant's motion for a continuance. "District courts generally are afforded great discretion regarding trial procedure applications (including control of the docket and parties), and their decisions are reviewed only for abuse of discretion." *Topalian v. Ehrman,* 954 F.2d 1125, 1139 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); *see also Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

According to defendant, defense counsel made a myriad of errors throughout the trial that were attributable to the advancement of the trial date. Without discussing the specifics, a number of factors undercut defendant's claim of prejudice. The court had already granted defendant two earlier continuances, moving the trial setting first from September 23 to October 15, and finally to December 16. Further, defense counsel had been present at the earlier trial of Johnnie Davis, defendant's severed co-defendant, and much of the evidence presented at the Davis trial overlapped with that offered in defendant's trial.[4] Finally,

---

4. One government witness, Charles Southard, was presented without prior notice to defense

counsel. However, Southard's surprise appearance is not attributable to the trial date advance-

defendant has made no showing that any of counsel's "errors" were caused by the advancement of the trial date. Counsel appears to be second-guessing himself on his trial performance, but from the record it is clear that he presented a vigorous defense and zealously represented his client. In hindsight, defense counsel may wish he had taken a different tack at certain points, but we cannot find that his decisions were unduly affected by the advancement of the trial date.

The district court's decision to advance defendant's trial was not an abuse of discretion.

## IV

When a defendant challenges the sufficiency of the evidence supporting his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

### A

■ Defendant was convicted of conspiring with Davis "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1); *see also id.* § 846 (attempt).

"The essence of a drug distribution conspiracy is an agreement between two or more persons to traffic in controlled substances." *United States v. Horn,* 946 F.2d 738, 740 (10th Cir.1991). To prove the existence of such a conspiracy, "the government must establish that (1) a conspiracy existed, (2) the defendant knew the essential objectives of the conspiracy, and (3) the defendant knowingly and voluntarily became a part of it." *United States v. Perez,* 959 F.2d 164, 168 (internal quotation omitted), *reh'g en banc granted,* 975 F.2d 677 (10th Cir.1992). This proof may be by di-

rect or circumstantial evidence, and defendant's participation may be inferred from his actions. *United States v. Savaiano,* 843 F.2d 1280, 1294 (10th Cir.1988). The fact of defendant's presence at the crime scene is material and probative, but mere presence "is not sufficient in and of itself." *Id.*

At trial, the government presented testimony from three different witnesses who claimed to have purchased heroin from defendant. Defendant argues that because each of these individuals was a current or former heroin addict with prior convictions based on dishonesty, their testimony cannot be credited. Such credibility determinations are for the finder of fact, and we do not second-guess them on appeal. The witnesses' testimony was corroborated by the discovery of small Ziploc bags and a case of matchbooks in defendant's car, consistent with the witnesses' description of how defendant packaged the heroin he sold. Viewing the evidence in the light most favorable to the government, the government established defendant's participation in narcotics trafficking.

The evidence that defendant conspired with Davis to distribute heroin consisted of the testimony of Williams, the recorded telephone conversation between Williams and Davis, and defendant's presence at Davis' house, after which heroin was seized from defendant's car. Although the government presented no direct evidence concerning an agreement between defendant and Davis, the circumstantial evidence was substantial. The jury could believe, as it evidently did, that through Williams, the government demonstrated the existence of a relationship between defendant and Davis, in which defendant acted as Davis' distributor for small amounts of heroin. The reference to "Wendall" in the recorded phone conversation supports this theory, as does the DEA agents' observation of defendant going to Davis' house and leaving after only a few minutes. Because the heroin found in defendant's car, like that discovered in Davis' house, was cut with

---

ment, and, at any rate, defense counsel was given the opportunity to prepare for Southard's

testimony and conducted a searching cross-examination.

**990**

lactose, it was permissible for the jury to conclude that defendant had visited Davis' house to obtain a supply of heroin.

**B**

Under 18 U.S.C. § 924(c)(1), "[w]hoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...." Conspiracy to distribute a controlled substance is defined as a drug trafficking crime. *See id.* § 924(c)(2).

To convict a defendant under § 924(c)(1), the government must make three showings: First, it must prove that the defendant committed the underlying crime. *United States v. Hill,* 971 F.2d 1461, 1463 (10th Cir.1992) (en banc). As noted, the government here met its burden of proving that defendant was guilty of conspiracy to distribute heroin.

Second, the government must prove that the defendant "used" or "carried" a weapon. *United States v. Parrish,* 925 F.2d 1293, 1297 (10th Cir.1991) (a showing of either use or carriage is sufficient). This court has repeatedly rejected the argument that the weapon must be found on the defendant's person for the defendant to be guilty of "carrying" the weapon. *See, e.g., United States v. Cox,* 934 F.2d 1114, 1121 (10th Cir.1991); *United States v. McDonald,* 933 F.2d 1519, 1526 (10th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991). In this case, as in *Cox* and *McDonald,* the weapon was found under the front seat of defendant's car, within easy reach, evincing defendant's dominion and control over the gun.

Third, the government must prove that the use or carriage of the weapon was "during and in relation to" the drug trafficking crime. "To prove this necessary relation, the Government's evidence must support a finding that the defendant *intended* the weapon to be available for use during the drug transaction." *United States v. Matthews,* 942 F.2d 779, 783 (10th Cir.1991). Here, the handgun was within easy reach underneath the seat, and was thus available. The "intended" or integral role inquiry, however, is the more difficult.

The cases interpreting the requirements of section 924(c) evidence a presumption of a nexus between the firearm and offense when an individual with ready access to the firearm is involved in a drug trafficking offense. However, a defendant charged with a drug trafficking offense may overcome this presumption by presenting some evidence suggesting the firearm was present for a reason other than facilitating the drug operation.

*Parrish,* 925 F.2d at 1298 (citation omitted).

Defendant argues that he carried the gun at his father's request, because of the roughness of the neighborhood and the nature of his work, which often involved making bank deposits. Defendant's father testified that he bought the gun for defendant when defendant opened a liquor store, and that he told defendant to carry the gun at all times. He stated that defendant had routinely carried a gun for the last fifteen years. Informant Williams testified that defendant was always carrying the gun when Williams purchased heroin. This is consistent with defendant's contention that he carried the gun wherever he went. However, the fact that defendant carried the weapon for personal protection when engaged in lawful activities does not negate the effect of its presence during illegal narcotics transactions. Drug traffickers may carry weapons to protect their merchandise, their cash receipts, and to intimidate prospective purchasers. *United States v. Williams,* 923 F.2d 1397, 1403 (10th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2033, 114 L.Ed.2d 118 (1991); *United States v. Moore,* 919 F.2d 1471, 1475 (10th Cir.1990). In this case the government met its burden of proving that the presence of the gun played an integral role in the drug trafficking conspiracy by helping to ensure its success. Therefore, the evidence adduced at trial was sufficient to support defendant's conviction under § 924(c)(1).

## V

Defendant argues that the recorded phone conversation between Williams and Davis and certain testimony of Williams was improperly admitted under Fed.R.Evid. 801(d)(2)(E), in that the government failed to prove the existence of the conspiracy by a preponderance of the evidence. Admission of evidence is reviewed for abuse of discretion. *Durtsche v. American Colloid Co.,* 958 F.2d 1007, 1011 (10th Cir.1992).

■ In light of *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), this circuit has developed a three-part test for the admission of co-conspirator statements under Rule 801(d)(2)(E). The district court must find "by a preponderance of the evidence that: 1) a conspiracy existed, 2) the declarant and the defendant against whom the declarations are offered were members of the conspiracy, and 3) the statements were made in the course of and in furtherance of the conspiracy." *United States v. Mobile Materials, Inc.,* 881 F.2d 866, 869 (10th Cir.1989), *cert. denied,* 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990). In making these findings, the court may examine the challenged statements themselves. *Bourjaily,* 483 U.S. at 181, 107 S.Ct. at 2781. "It is preferable that the court make these determinations before allowing the co-conspirator statements to be heard by the jury. When these determinations are made pre-trial, the district court should reaffirm its findings at the conclusion of the presentation of the Government's evidence at trial." *Wright,* 932 F.2d at 880 (citation omitted).

■ In a pretrial order, Judge Theis ruled that no hearing on the admissibility of the statements was necessary, because he had presided over the earlier trial of Davis (defendant's severed co-defendant) and had determined that the government's evidence met the appropriate standard. Judge Theis ordered the government to follow the preferred order of proof outlined above. During trial before Judge O'Connor, defense counsel renewed his objection to the admission of the statements, and the court ruled that the statements would be conditionally admitted pending a finding at the close of the government's case. After the government rested, the court made the requisite findings for admission of the statements. This procedure satisfied the requirements of *Wright* and *Mobile Materials.* Having previously held that the government presented sufficient evidence of the existence of the conspiracy and defendant's participation therein, we perceive no error in the court's admitting the co-conspirator statements under Rule 801(d)(2)(E).

## VI

■ Defendant asserts that the district court erred in failing to give an "addict" instruction to the jury. Under defendant's proposed instruction, the jury would have been informed of an addict's constant need for drugs and money, and told to consider these circumstances in weighing the addict's testimony. District court decisions concerning jury instructions are reviewed for abuse of discretion. *Durtsche,* 958 F.2d at 1011.

"We review the jury instructions in light of the record as a whole to determine whether they provided the jury with the requisite understanding of the issues presented at trial and the legal standards applicable to those issues." *United States v. Cook,* 949 F.2d 289, 294 (10th Cir.1991). Although the use of an "addict" instruction was approved by this court in *United States v. Smith,* 692 F.2d 658, 661 (10th Cir.1982), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983), we there declined to find that the court's refusal to give such an instruction was error, in light of the other instructions given by the court. The same is true in this case.

Here, the court gave a general impeachment instruction, stating that "[i]t is the province of the jury to determine the credibility, if any, to be given the testimony of a witness who has been impeached." Appellant's Partial App. at 98. Defense counsel vigorously cross-examined each addict witness, drawing attention to their potential personal interests in testifying and to seeming inconsistencies in their testimony. The court's impeachment instruction specifically told the jury to weigh carefully the

credibility of the witnesses so impeached. Further, the court instructed the jury as to the credibility of felony witnesses, telling them that "[t]he fact that a witness has been convicted of crime may be considered by you in determining what credit you should give him as a witness and what weight you will allow his testimony." *Id.* at 100. This instruction directly alerted the jury to the credibility problems of the addict witnesses, even though it made no reference to drug addiction.

One of the addict witnesses, Charles Southard, admitted that he was testifying on a promise from the prosecution that none of his testimony would be used subsequently against him. The court told the jury to consider carefully the credibility of an immunized witness such as Southard, given the potential for self-serving testimony or vindictiveness against the defendant. Finally, the court told the jury that "[i]n weighing the testimony of the witnesses, you have a right to consider their appearance and manner while testifying, their means of knowledge, apparent intelligence or ignorance, interest or want of interest in the outcome of the case, and all other facts and circumstances appearing in the trial which will aid you in arriving at the truth." *Id.* at 106. If the other instructions did not alert the jury to its responsibilities for determining the credibility of witnesses, this one made that duty clear. In view of the other instructions given by the court, the failure to give defendant's proposed "addict" instruction was not an abuse of the court's discretion.

### VII

Defendant argues that, even if the objections we have considered and rejected do not warrant reversal, the cumulative effect of these putative errors denied him due process and a fair trial. Because we have rejected each of defendant's claims of error, there is no basis for holding that he was denied a fair trial.

AFFIRMED.