39 F.3d 1193
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff/Appellee,
v.
Pierre SELLAN, Defendant/Appellant.
 No. 93-4205.
 United States Court of Appeals, Tenth Circuit.
 Nov. 14, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before HENRY and LOGAN, Circuit Judges, and BROWN, Sr. District Judge.[2]
 
 
 2
 Defendant Pierre Sellan entered a conditional guilty plea to one count of aiding and abetting in the possession of cocaine with the intent to distribute in violation of 21 U.S.C. 841(a). The district court denied Mr. Sellan's motion to suppress evidence seized when a Utah State Highway Patrol officer searched Mr. Sellan's truck. Mr. Sellan appeals the denial of the motion to suppress, and we affirm the decision of the district court.
 
 BACKGROUND
 
 3
 Mr. Sellan and another Latin-American male passenger were traveling on a highway in Utah at approximately 8:45 a.m. on February 16, 1993. They drove a 1986 Nissan pickup truck with New York license plates and a camper shell. Utah State Highway Patrol Officer Paul Mangelson[3] pulled briefly alongside Mr. Sellan's truck, activated his video recording equipment,[4] and pulled the truck over to the shoulder of the highway. Officer Mangelson testified that the truck was going 70 miles per hour in a 65 mile per hour zone and that wet and sloppy road conditions made that speed dangerous.[5] In addition, Officer Mangelson testified that backsplash was so thick on the windows that he could not see that the men in the truck were Latin-American when he pulled alongside.
 
 
 4
 Officer Mangelson walked to the truck and asked Mr. Sellan to produce his driver's license and vehicle registration. Mr. Sellan handed Officer Mangelson his valid New York driver's license and an envelope that contained a valid Tennessee vehicle registration in Mr. Sellan's name. Officer Mangelson also testified that the envelope held a receipt dated January 8, 1994, about six weeks earlier, from a lube job in Jackson Heights, New York.[6] The receipt stated that the truck had 136,905 miles when it was serviced. Officer Mangelson further testified that he saw that the truck had 143,708 miles on it when he looked at the odometer during the stop. Although the district court found that Officer Mangelson looked at the odometer during the stop, exactly when Officer Mangelson looked at the odometer is not clear from the record. The record indicates only that Officer Mangelson examined the documentation before proceeding to look at the odometer.
 
 
 5
 Officer Mangelson testified that he was "blasted" by the smell of air freshener from the truck and that his experience indicated that strong air freshener was used to disguise the smell of drugs. Officer Mangelson next asked Mr. Sellan and his passenger where they were from and where they were going. Mr. Sellan stated that he was born in New York, but lives in Tennessee. He also told Officer Mangelson that he had been visiting California and that he and his passenger were going skiing in Utah. Mr. Sellan asked Officer Mangelson for the names of good ski areas in Utah. Observing that Mr. Sellan had very little luggage, Officer Mangelson asked Mr. Sellan if he and his passenger had any ski equipment. Mr. Sellan responded that they planned to rent equipment. Officer Mangelson also testified that he was familiar with Jackson Heights, New York, and understood it to be "drug infested."
 
 
 6
 Officer Mangelson turned and began walking back to his patrol car with Mr. Sellan's license and registration. As he walked back, however, Officer Mangelson observed fresh black paint where the camper shell was bolted to the truck and stooped down to inspect the wheel wells. Officer Mangelson further testified that he observed that the fuel tank had been lowered and that the cross supports had been removed. After reaching his car, Officer Mangelson made a radio call to his dispatcher, asking for information on the truck, Mr. Sellan, and his passenger.[7]
 
 
 7
 Officer Mangelson approached the truck again and asked Mr. Sellan for permission to search the truck. Mr. Sellan consented, opened the back door of the camper shell, and showed Officer Mangelson his luggage. Officer Mangelson inspected the rear of the camper shell and then, with Mr. Sellan by his side, began to search the truck's passenger compartment. Officer Mangelson searched the glove compartment and found tools, nuts and bolts, a receipt for a pager, an air freshener, and a stamp he suspected was covered with LSD in a plastic bag.
 
 
 8
 Officer Mangelson returned to his patrol car with Mr. Sellan and asked Mr. Sellan for written permission to further inspect the truck. Mr. Sellan noted that Officer Mangelson already had searched the truck and asked Officer Mangelson exactly what else he wanted to do. Officer Mangelson responded that he was specifically interested in looking more closely at the bed of the truck. Mr. Sellan then signed the release.[8] Officer Mangelson and Mr. Sellan next returned to the back of the truck and Officer Mangelson removed several bolts securing the bedliner to the truck bed. After lifting the bedliner, Officer Mangelson observed what appeared to be an access door to a compartment beneath the truck.
 
 
 9
 Officer Mangelson next placed Mr. Sellan and his passenger under arrest. The Highway Patrol dismantled the truck, and found 72 kilograms of cocaine in the compartment concealed beneath the truck bed.
 
 
 10
 Mr. Sellan moved to have the evidence suppressed, arguing that it was seized in violation of the Fourth Amendment. At a suppression hearing, the district court found that the stop was not pretextual, that Officer Mangelson's detention of Mr. Sellan was based upon reasonable suspicion, and that Mr. Sellan had consented to the search of his truck.
 
 DISCUSSION
 
 11
 Mr. Sellan argues that the district court erred in not suppressing evidence obtained in the search. Specifically, he argues that the search was conducted pursuant to an illegal stop, that Officer Mangelson unlawfully detained him, that Mr. Sellan's consent was not voluntary, and that the search exceeded the scope of the consent. "When reviewing the denial of a motion to suppress, we accept the district court's findings of fact unless they are clearly erroneous." United States v. Lyons, 7 F.3d 973, 975 (10th Cir.1993). However, this court determines legal conclusions of reasonableness under the Fourth Amendment de novo. Id.
 
 Pretextual Stop
 
 12
 Mr. Sellan first argues that the stop was pretextual and that the district court erred in holding that a reasonable officer would have stopped the defendant for going 70 miles per hour in the wet weather conditions. Mr. Sellan argues that Officer Mangelson did not stop him because he was speeding, but because he is a Latin-American male who was driving a pickup truck with New York license plates.
 
 
 13
 "A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place ... for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop." United States v. Guzman, 864 F.2d 1512, 1515 (10th Cir.1988). Whether a stop is pretextual is based upon an objective standard rather than upon an officer's subjective intent. Id. at 1515; Lyons, 7 F.3d at 975. We ask whether a reasonable officer would have made the stop under the given facts absent the invalid purpose. Guzman, 864 F.2d at 1517; Lyons, 7 F.3d at 975. Under this standard, the officer's subjective intent is not relevant, and whether the officer could have stopped the defendant for the cited violation is not determinative. Guzman, 864 F.2d at 1515. However, "Absent introduction of any rationale for the stop outside the parameters of the traffic violations, the stop cannot, by definition, be called 'pretextual.' " United States v. Horn, 970 F.2d 728, 731 (10th Cir.1992).
 
 
 14
 In this case, the videotape shows that Mr. Sellan admitted he was driving 70 miles per hour, that the roads were wet, and that passing vehicles pushed backsplash into the air as they drove by Mr. Sellan and Officer Mangelson. We find that the district court did not err in finding that an objective officer would stop a motorist for going 70 miles per hour in the wet road conditions.
 
 Illegal Detention
 
 15
 Mr. Sellan next argues that he was illegally detained because Officer Mangelson did not have reasonable suspicion to do anything but write a traffic ticket and return Mr. Sellan's license and registration. Mr. Sellan also argues that the district court erred when it relied upon the Jackson Heights origin of the lube receipt in its analysis. In addition, Mr. Sellan argues for the first time on appeal that Officer Mangelson violated Guzman when he checked the truck's odometer and noticed the discrepancy between the odometer and the lube receipt. All evidence obtained after Officer Mangelson checked the truck's odometer, Mr. Sellan argues, is tainted by the illegal search and should have been suppressed.
 
 
 16
 "During a routine traffic stop, the detaining officer may request a driver's license and vehicle registration, run a computer check on the car and driver, and issue a citation." United States v. Soto, 988 F.2d 1548, 1554 (10th Cir.1993) If the officer wishes to detain the driver for further questioning unrelated to the initial stop, the officer must have an objectively reasonable articulable suspicion that illegal activity has, or is, occurring. Id. In Soto, for example, we held that an officer had reasonable suspicion based upon the driver's "panicky" behavior and inability to tell the officer the address of the uncle from whom he claimed to have borrowed the car. Id.; see also United States v. Pena, 920 F.2d 1509, 1514 (10th Cir.1990), cert. denied, 501 U.S. 1207 (1991) (holding that officer had reasonable suspicion based upon inconsistent answers to questions, inability to produce car title, driver's license from different state than car license plates, and punched-out trunk lock).
 
 
 17
 In this case, the district court cited strong evidence showing that Officer Mangelson had reasonable suspicion. Officer Mangelson testified that he could smell a strong odor of air freshener, that he was suspicious that Mr. Sellan and his passenger said they were going skiing and had a variety of maps, but no ski equipment or specific destination, and that he saw the lube receipt from Jackson Heights, New York. In addition, Sellan admitted that he was traveling from California, and the receipt showed that the truck was in New York only six weeks earlier.
 
 
 18
 The district court further noted that Officer Mangelson testified that there was fresh paint on the truck where the camper shell attached to the truck and that the wheel wells looked suspicious. Officer Mangelson also testified that there were 7,000 more miles on the truck than there had been when the truck was serviced in New York.
 
 
 19
 However, we are concerned about the district court's discussion of the lube receipt in its opinion for two reasons. First, the district court did not make a finding on whether Jackson Heights, New York, was associated with drug trafficking, but nevertheless stated that Officer Mangelson's "subjective belief" that the area was associated with drug trafficking "increased his suspicions." Memorandum Decision & Order Re: Motion to Suppress, Brief of Appellant Addendum B at 9, n. 6. Subjective belief, however, is not part of the objective standard this court adopted in Guzman. However, the district court's opinion is phrased to suggest that Officer Mangelson had an objectively reasonable suspicion before he examined the receipt to the extent that it states that Officer Mangelson looked at the receipt upon "further inspection." The origin of the New York receipt, moreover, would still be probative because, combined with Mr. Sellan's comments about his travels, it shows that the truck had made at least two cross-country trips within six weeks.
 
 
 20
 Second, Officer Mangelson's looking at the odometer may have been overly intrusive. This court has held that until an officer has developed reasonable suspicion, there is no legitimate reason for that officer to check a car's odometer. Guzman, 864 F.2d at 1519. However, Mr. Sellan did not argue that Officer Mangelson violated Mr. Sellan's Fourth Amendment rights by looking at the odometer at the suppression hearing, and we choose not to consider that argument for the first time on appeal.[9] We therefore find sufficient evidence and hold that the district court did not commit reversible error.
 
 Scope of Consent
 
 21
 Mr. Sellan argues that Officer Mangelson exceeded the scope of Mr. Sellan's consent by searching the cab of the truck. The scope of a consent search is limited by the breadth of consent. Pena, 920 F.2d at 1514. "Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of all the circumstances." United States v. Espinosa, 782 F.2d 888, 892 (10th Cir.1986). In this case, however, there is clear evidence showing that Officer Mangelson did not exceed the scope of Mr. Sellan's consent. The videotape shows that Mr. Sellan consented to the search of the truck, and that Mr. Sellan stood next to Officer Mangelson as he expanded the search from the truck bed to the passenger compartment. Even if the consent was ambiguous, and we do not believe it was, Mr. Sellan's failure to object suggests that the consent was valid. Id. at 892 (failure to object indicates consent in some circumstances); Pena, 864 F.2d at 1515 (defendant's failure to object and apparent consent sufficient to expand search from rear passenger compartment and trunk to body panels when there is general consent to search the vehicle). It was therefore not error for the district court to determine that Officer Mangelson legitimately searched the truck and the passenger compartment.
 
 Voluntary Consent
 
 22
 Mr. Sellan next argues that even if the stop was not pretextual and the detention were not illegal, his consent to the search of the truck was tainted and thus invalid.
 
 
 23
 It is well-established that a suspect may consent to a search. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Nicholson, 983 F.2d 983, 988 (10th Cir.1993). The government must show that there was no duress or coercion, that the consent was unequivocal and specific, and that consent was freely given under the totality of the circumstances. Nicholson, 983 F.2d at 988.
 
 
 24
 In this case, we have already determined that the stop was not pretextual and that the detention was not illegal. In addition, although he argues that he did not sign the consent form at the time of the stop, we cannot say that the district court erred by holding that Mr. Sellan's consent was voluntary. The videotape and Officer Mangelson's testimony both indicate that Mr. Sellan's verbal and written consent were voluntary and uncoerced. We thus see no reason to find that district court erred in finding Mr. Sellan's consent voluntary.
 
 
 25
 For the reasons stated above, the defendant's conviction is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order. 151 F.R.D. 470 (10th Cir.1993)
 
 
 [2]
 The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation
 
 
 [3]
 Officer Mangelson is a 26-year veteran of the Utah State Highway Patrol
 
 
 [4]
 Most of the stop was recorded on videotape and is part of the record. Because Officer Mangelson was running out of videotape, he turned the camera off for approximately nine minutes. However, the searches and the consents thereto were recorded
 
 
 [5]
 On the videotape, Mr. Sellan admitted that he was going 70 miles per hour
 
 
 [6]
 Mr. Sellan's testimony about when Officer Mangelson saw the lube receipt is inconsistent with Officer Mangelson's testimony. Mr. Sellan testified that he gave officer Mangelson only his vehicle registration, and that Officer Mangelson found the receipt hours later
 
 
 [7]
 Officer Mangelson testified that his dispatcher had possible "hits" on both Mr. Sellan and his passenger. However, the camera was not recording during this time
 
 
 [8]
 Mr. Sellan testified that he did not sign the consent form on the highway, but did so hours later at the police station. However, the videotape clearly shows Officer Mangelson asking Mr. Sellan to sign a consent form, and giving Mr. Sellan a piece of paper, Mr. Sellan accepting the paper, and both parties acting as if Mr. Sellan had signed the paper
 
 
 [9]
 There was considerable evidence for the district court to find that Officer Mangelson had reasonable suspicion at the time he looked at the odometer. Assuming, arguendo, that Jackson Heights is not associated with drug trafficking, (and there is some evidence in the record that Officer Mangelson may have confused Jackson Heights with Washington Heights), there was adequate objective evidence to give Officer Mangelson reasonable suspicion. The air freshener, the lube receipt in conjunction with the conversation indicating several multi-state trips, the visible absence of ski equipment or much luggage and the request for the names of ski areas could raise a reasonable officer's suspicions enough to justify reviewing the odometer