**Filed 3/27/96**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

      v.

WING CHEUNG LAU,

      Defendant - Appellant.

No. 95-5108

N.D. Oklahoma

(D.C. No. 94-CR-145-04-E)

---

**ORDER AND JUDGMENT**[*]

---

Before ANDERSON, McKAY, and MURPHY, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**INTRODUCTION**

Defendant/Appellant Wing Cheung Lau was convicted of Conspiracy under 18 U.S.C. § 371; Transporting Counterfeit Credit Cards in Interstate Commerce and Aiding and Abetting, under 15 U.S.C. § 1644(b) and 18 U.S.C. § 2; and two counts of Use of Counterfeit Access Devices and Aiding and Abetting, under 18 U.S.C. §§ 1029(a)(1) and 2. Lau's sole argument on appeal is that he was arrested without probable cause and therefore the district court erred by not granting his motion to suppress evidence discovered incident to the arrest. We affirm.

**I.**

On August 17, 1994, three Asian males made and attempted to make credit card purchases in Moody's Jewelry Store in Tulsa, Oklahoma. Lau entered the store briefly, but made no purchases. The three making purchases were filmed on the store's video surveillance camera; Lau was not. Lau was remembered by store employees, however, as wearing a distinctive "abstract colored light shirt." Appellant's App. at 10. As Lau and his partners began to drive away in a blue minivan, the store employees recorded the van's license plate number because of the suspicious nature of the purchases. See id. at 11. Tulsa Police Detective Andrew Frank was then contacted with the information.

Frank went immediately to Moody's, took statements from witnesses, watched the surveillance videotape, and learned through the United States Automobile Association

- 2 -

Credit Card Center that at least one of the credit cards proffered by the suspects was counterfeit. Id. at 8-10; Appellee's Br. at 3. An employee advised Frank that a suspect had been overheard saying they needed to catch a flight. Acting on this information, Frank decided to check Promenade Shopping Mall ("Promenade"), en route to the airport, on a hunch that the suspects may be attempting to defraud another jewelry store. Appellant's App. at 11, 15.

He located the van in the Promenade parking lot and called a security guard for assistance. As the suspects were leaving the mall and entering the van, the security guard pulled his vehicle around to the front of the van and Frank moved his vehicle to block its rear. Id. at 13. Frank then detained the suspects until uniformed officers took them into custody. Subsequently, the suspects were positively identified as having made credit card purchases by employees from both Reeds Jewelers, the jewelry store at Promenade, and Moody's Jewelry. Id. at 15. The Reeds employee also informed Frank that Lau had assisted in the purchases made at Reeds, but had made no actual purchases himself. Id. at 21-22.

Officers then searched the suspects and seized two counterfeit California driver's licenses, counterfeit social security cards, counterfeit credit cards, receipts from other purchases, personal papers, and two hotel keys. Id. at 17; Presentence Investigation Report, R. Vol. II at 7. Lau had a hotel key, but was not carrying any forged or counterfeit credit cards. Appellant's App. at 23; R. Vol. II at 7. On August 18, 1994, two

U.S. Secret Service Agents obtained search warrants for the two hotel rooms. The agents recovered, inter alia, merchandise from Saks Fifth Avenue purchased for $4,797.90, United Airline tickets worth $996.00, the counterfeit credit card used to purchase the airline tickets, and two other credit cards. R. Vol. II at 7.

On the basis of this information, Wing Lau and his three partners were named in a six-count Superseding Indictment for the transportation and use of counterfeit and fictitious credit cards in interstate commerce. On December 22, 1994, the court declared a mistrial with respect to Lau, as the jury was unable to reach a unanimous verdict in his case. On January 25, 1995, a second jury trial ended with guilty verdicts on four counts of the Superseding Indictment.

## II.

Lau contends that because Frank could not identify any crime Lau committed, Frank lacked probable cause to arrest him when he was first detained. Accordingly, if Lau's arrest was illegal, any evidence seized in the searches incident to that arrest is inadmissible against him. See Wong Sun v. United States, 371 U.S. 471, 485 (1963). We review a district court's denial of a motion to suppress evidence under a clearly erroneous standard and consider the evidence in the light most favorable to the district court's ruling. United States v. Ortiz, 63 F.3d 952, 954 (10th Cir. 1995); United States v. Nicholson, 983 F.2d 983, 987 (10th Cir. 1993). '"[T]he ultimate determination of Fourth

Amendment reasonableness is a conclusion of law which we review de novo.'" United States v. Zapata, 997 F.2d 751, 756 (10th Cir. 1993) (quoting United States v. Allen, 986 F.2d 1354, 1356 (10th Cir. 1993)).

We conclude under the circumstances of this case that Frank had probable cause to arrest Lau. See Henry v. United States, 361 U.S. 98, 102 (1959) ("Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed."). Frank specializes in credit card fraud, is President of the Oklahoma Chapter of the International Association of Credit Card Investigators, and is a veteran police officer of twenty-one years. Appellant's App. at 7, 12, 19, 26. Frank therefore had a great deal of experience supporting his actions, particularly in the context of credit card fraud operations. In the instant case, he knew that Lau had been in Moody's with others making purchases with counterfeit credit cards and could identify Lau by his distinctive shirt. Id. at 22, 25-26. Thus, when Frank arrested the defendants, he knew that Lau was with a group who was committing crimes, and suspected that this group had just "hit" another store on their way out of state. Based on the above information, it is clear that Frank possessed sufficient particularized information on Lau, as well as the others, to give him probable cause to arrest all four suspects. The district court correctly denied Lau's motion to suppress.

AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge