**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 7 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES K. McCLELLAND,

Defendant-Appellant.

No. 97-5014

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 95-CR-102-B)

---

Joel L. Wohlgemuth (Christine D. Little, also of Norman & Wohlgemuth, Tulsa, Oklahoma, with him on the briefs) for Defendant-Appellant.

Kevin C. Leitch, Assistant U.S. Attorney (Stephen C. Lewis, United States Attorney, Tulsa, Oklahoma, with him on the brief) for Plaintiff-Appellee.

---

Before BALDOCK, LOGAN, and LUCERO, Circuit Judges.

---

LOGAN, Circuit Judge.

---

Defendant James K. McClelland appeals his conviction by a jury of causing interstate transportation of securities and moneys knowing they were taken by fraud and inducing interstate travel, in violation of 18 U.S.C. § 2314, and conspiracy, in violation of 18 U.S.C. § 371. Defendant contends (1) that the government's failure to preserve evidence denied him due process; and that the district court abused its discretion in (2) permitting the government to use evidence belatedly produced to the defense and (3) admitting certain evidence under Fed. R. Evid. 404(b). He further challenges the sufficiency of the evidence to support (4) his conviction for conspiracy to commit fraud, or (5) that he caused interstate travel by the two complaining witnesses. Finally, defendant contends that (6) the district court misapplied the sentencing guidelines.

I

The government's evidence established that defendant served as president of Viking Communications, Ltd. (Viking), a Chicago-based company that sold telephone equipment to pay telephone service providers. Viking obtained parts and supplies and its technicians then assembled the pay telephones for sale. Among the parts incorporated into these telephones were used GTE circuit boards, the fundamental electronic mechanism of the telephone. Viking advertised its products and services nationally and specifically represented the pay telephones as new GTE equipment.

Triangle Communications (Triangle), an Oklahoma partnership of Jeff Lowry and Joe Beavers, entered into two separate sales contracts with Viking in March 1993 to

purchase a total of fifty-five pay telephones. These contracts, which led to defendant's original indictment, provided for a one-year equipment warranty and delivery within ninety days, although delivery was promised to begin within ten days. By mid-April Viking had shipped only eleven telephones to Triangle. Lowry and Beavers discovered scratches on the equipment and North American Marketing and other stickers inside the telephones, leading them to suspect that the circuit boards and other components in the eleven telephones were not new. In April 1993 they arranged for Sheri Westfall, a GTE representative, and Ron Lovejoy, an owner of pay telephones who also supplied telephone parts and performed repair work, to inspect the Viking telephones. Lovejoy was an authorized supplier of new GTE pay telephones. Both concluded that the circuit boards were used; Westfall photographed the equipment and created an audio tape preserving her observations.

Viking later shipped sixteen more telephones to Triangle; in May 1993 Westfall examined these telephones and also reexamined the original eleven telephones. Westfall concluded that all twenty-seven telephones contained used circuit boards. She again photographed the equipment and recorded her evaluation on an audio tape. After defendant and his employees failed to resolve Triangle's objections to those twenty-seven telephones, or to deliver or refund payment on the remaining twenty-eight, Lowry and Beavers contacted the Federal Bureau of Investigation (FBI).

Triangle sold twenty-two telephones to Lovejoy in March 1995 because of the financial strain caused by defendant delivering twenty-seven used telephones that were not installed and generating revenue, and Viking's failure to refund the purchase price paid on the undelivered telephones. Lowry and Beavers testified at trial that they did not alter the circuit boards in those Viking telephones before the sale. The FBI case agent, Brenda Entrikin, later learned of the sale and contacted Lovejoy. He assured her that he had not altered the telephones, including the circuit boards, and agreed to retain them in his possession. Entrikin and the Assistant U.S. Attorney concluded that the circuit boards were the most critical evidence and retrieved those boards from Lovejoy.[1] The government also recovered the five complete telephones Triangle did not sell and they were available at trial. The government presented testimony from a number of witnesses, including Viking's supplier and several Viking employees, who testified that the circuit boards contained in the twenty-seven telephones sold by Viking to Triangle were used.

After defendant's indictment, his trial was postponed several times. Lovejoy and defendant's experts both tested the twenty-seven circuit boards before trial. Defendant received Lovejoy's test results before performing his own testing. During trial, the court denied defendant's motion to dismiss the indictment because of willful destruction or loss

_____

[1] Lovejoy ultimately incorporated the remaining equipment into his telephone inventory.

of exculpatory evidence. The jury found defendant guilty on all counts. The district court imposed a forty-one-month prison term based on an $820,000 loss calculation.

II

Defendant first contends that the government's failure to preserve evidence denied him due process. He argues that the remaining portions of the twenty-two telephones sold to Triangle was material exculpatory evidence. We review for clear error a district court's finding whether the government destroyed exculpatory evidence. United States v. Bohl, 25 F.3d 904, 909 (10th Cir. 1994). The issue of prosecutorial bad faith is a mixed question of law and fact, but because the factual question predominates we review that issue for clear error. Id.

The district court concluded that the twenty-seven circuit boards were used and that the circuit board was "the most significant part of the telephones." III R. 657. The court relied in part on defendant's stipulation to the government expert's test results on the twenty-seven circuit boards establishing that they were used or refurbished. The court further concluded that the failure of the circuit boards to function properly caused the victims' loss. Based on those factual findings, the absence of any evidence that the missing telephone equipment would exculpate defendant, and no showing of bad faith by the government, the court refused to dismiss.

A defendant's Fourteenth Amendment due process rights include a general right to access evidence. The government's duty to preserve evidence, however, only requires

that evidence be preserved if it "might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). The evidence may not be destroyed if its exculpatory value is apparent and the defendant is unable reasonably to obtain comparable evidence. Id. If the value of the lost evidence is lower because it is only "potentially useful" to the defendant, however, a defendant must establish bad faith by the government in its failure to preserve the evidence. Arizona v. Youngblood, 488 U.S. 51, 58 (1988).

Applying these principles, we hold that the district court did not err in finding that the missing telephone equipment was not so material to the defense as to deny defendant's constitutional rights. The record contains extensive evidence that defendant sold telephones to Triangle that contained used circuit boards. As the fundamental electronic component of a properly functioning pay telephone, those circuit boards were the most probative evidence establishing that Viking did not sell Triangle new telephones. The missing telephone equipment could not have established that the circuit boards were new. Thus, defendant failed to meet the initial showing required by Trombetta that the lost or destroyed evidence had exculpatory value apparent to the government at the time of the loss.

Defendant also has not established that the missing telephone parts were potentially useful to the defense. The government evidently could have retrieved all twenty-seven telephones from Lovejoy, but determined that only the circuit boards were

needed as evidence. By deciding they needed only the circuit boards, the government relinquished evidence that in all likelihood was more valuable to them than to the defendant, because the remaining telephone equipment might have bolstered the government evidence that the telephones contained other used components in addition to the circuit boards. Defendant has never identified the potential exculpatory value of these other items of telephone equipment.

## III

Defendant contends that the government failed to comply with its discovery agreement and demonstrated its bad faith by delivering hundreds of pages of documents to his counsel's office less than forty-eight hours before the scheduled trial. Defendant also asserts that the government failed for more than a month to produce documents pertaining to key witnesses. He contends that the district court abused its discretion in failing to suppress that evidence. See United States v. Wicker, 848 F.2d 1059, 1060-61 (10th Cir. 1988).

When considering whether to suppress evidence as a sanction for an alleged Fed. R. Crim. P. 16 violation, a court is guided by three factors: the reason for delay, including considerations of bad faith; prejudice caused by the delay; and the feasibility of a continuance to cure any prejudice. Wicker, 848 F.2d at 1060-61.

The record supports the district court's conclusion that the government acted in "reasonably good faith" and that document production delays to defendant were not

unreasonable. Although defendant asserts that lengthy delays occurred, the record reflects that only two government exhibits were not delivered to defense counsel within approximately a month of their receipt by the prosecution. The court granted a one-week continuance to review the documents belatedly delivered to defense counsel. Defendant has failed to identify any prejudice he suffered and has not provided a factual basis for his assertion that the one-week continuance was inadequate. We thus conclude that the district court did not abuse its discretion in refusing to suppress the evidence.

IV

Defendant next argues that the district court erred in admitting Fed. R. Evid. 404(b) evidence of defendant's prior similar business dealings and the testimony of former Viking employees that defendant sold used pay telephones as new. See I R. 107-08. We review for abuse of discretion the admission of prior acts evidence. United States v. McDermott, 64 F.3d 1448, 1456 (10th Cir. 1995).

Based on our review of the record, we reject defendant's contentions that the government failed to produce sufficient evidence to support a jury finding that he actually committed the prior bad acts, see Huddleston v. United States, 485 U.S. 681, 685 (1988); and that the evidence was irrelevant and so prejudicial and confusing as to outweigh its probative value.

The challenged testimony met the criteria of Rule 404(b). Each witness addressed at least one of the purposes listed in Rule 404(b), and the testimony was not inflammatory

or so extensive in the context of the trial as a whole to be unduly prejudicial. These other incidents showed defendant employed the same marketing scheme with other Viking customers, including broken promises to quickly deliver new pay telephones. The district court carefully and repeatedly admonished the jury regarding the limited purpose for which it should consider this testimony.

V

Defendant asserts that Viking's pre-contract representations were merely sales pitches or puffery, not actionable criminal fraud; that even if the telephones were used that fact does not support his conviction. We review de novo the legal question whether defendant's conduct was prohibited. United States v. Young, 952 F.2d 1252, 1255 (10th Cir. 1991). We view the direct and circumstantial evidence together and in the light most favorable to the government to determine if a reasonable jury could have found defendant guilty beyond a reasonable doubt. United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir.), cert. denied, 117 S. Ct. 226 (1996).

The record contains an overwhelming amount of evidence that defendant sold used telephones to prospective purchasers with false and misleading representations that the equipment was new and that Viking would provide support for the purchasers' establishment of their pay telephone business. These representations exceed the bounds of mere salesmanship and are legally sufficient to constitute criminal fraud.

We also reject defendant's contentions that the evidence was insufficient to support his conviction. Defendant, through his expert, emphasized the importance of the warranty. However, Viking employees recounted defendant's intention to use his contract and warranty as a shield against customer complaints. They also testified to incorporating used components, including circuit boards, into telephones built for resale.

VI

Defendant next contends that he was not the efficient cause of interstate travel as required to support his conviction under 18 U.S.C. § 2314. That section requires proof a defendant knowingly and actively participated in a scheme that induced a victim to travel across state lines. United States v. Roberts, 22 F.3d 744, 749 (7th Cir. 1994). Personal contact and personal inducement to travel need not be shown.

Here, codefendant Ron Sterning testified that he made flight arrangements for Lowry and Beavers at defendant's request, and that defendant agreed to pay for the tickets. The jury accepted this evidence as credible and found that it satisfied the interstate travel requirement in the statute. Nothing in the record revealed probative evidence to the contrary that would require us to reverse the jury's finding.

VII

Finally defendant contends that the district court misapplied the sentencing guidelines, in considering his dealings with other customers as relevant conduct and in calculating the loss under USSG § 2F1.1. We review factual findings supporting a base

offense level calculation for clear error. United States v. Roederer, 11 F.3d 973, 976 (10th Cir. 1993). We review de novo the district court's application of the sentencing guidelines to the facts when that application involves a contested legal issue. United States v. Rudder, 897 F.2d 1558, 1560 (10th Cir. 1990). Loss assessment is a question of law. United States v. Williams, 50 F.3d 863, 864 (10th Cir. 1995).

USSG § 1B1.3(a)(2) reads:

**Relevant Conduct (Factors that Determine the Guideline Range)**

(a) <u>Chapters Two (Offense Conduct) and Three (Adjustments)</u>. Unless otherwise specified, (I) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

. . . .

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction.

We have interpreted this language to mean that if the conduct is sufficiently similar and within the same temporal proximity, it may be considered relevant for purposes of determining the guideline range. Roederer, 11 F.3d at 977-79.

The other Viking customers purchased used telephones that they believed were new, received defective equipment, or received their orders late or did not receive refunds

for undelivered orders.  All of these transactions occurred between 1990 and 1996, most of them between 1992 and 1995.  The district court did not err in treating all of these incidents as relevant conduct for sentencing purposes.  The incidents, though not related to each other, illustrate the same course of criminal behavior.

As to the loss quantification, USSG § 2F1.1(b)(1) reads:

> **Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States**
> . . . .
> (b) Specific Offense Characteristics
>
>     (1)    If the loss exceeded $2,000, increase the offense level as follows:
>         . . . .
>
> | Loss (Apply the Greatest) | Increase in Level |
> |---|---|
> | . . . . | |
> | (L)    More than $800,000 | add **11** |

Application note 8 provides:

> For the purposes of subsection (b)(1), the loss need not be determined with precision.  The court need only make a reasonable estimate of the loss, given the available information.  This estimate, for example, may be based on the approximate number of victims and an estimate of the average loss to each victim, or on more general factors, such as the nature and duration of the fraud and the revenues generated by similar operations.  The offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss.

The district court totaled the losses of available Viking customers, which far exceeded the $800,000 threshold requirement to add eleven to defendant's offense level.

XII R. ¶¶ 24-112; USSG § 2F1.1(b)(1)(L).  Defendants failed to provide an evidentiary

basis to substantiate a lower loss calculation.  The court used figures documented in both the presentence report and at trial.  We see no error in the district court's loss calculation of $820,000.

AFFIRMED.