**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 4 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SULLIVAN ROSS CHANEY,

Defendant - Appellant.

No. 98-5045

(N.D. Oklahoma)

(D.C. No. CR-97-53-C)

**ORDER AND JUDGMENT** *

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

Sullivan Chaney was convicted by a jury in the district court of conspiracy to possess with intent to distribute cocaine base (crack cocaine) and conspiracy to distribute cocaine base, violations of 21 U.S.C. § 846. He was also convicted of distribution of cocaine base, in violation of 18 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He received two concurrent sentences of 292 months of incarceration. He appeals both his convictions and sentences, contending that the district court

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

(1) should have excluded a videotape belatedly disclosed by the prosecution;

(2) should not have allowed the videotape to be shown to the jury twice;

(3) erroneously refused to give an instruction regarding the credibility of drug addicts; and (4) improperly enhanced his sentence for weapons possession. He also argues that the government impermissibly presented testimony from witnesses who had been promised leniency. For the reasons below, we reject each of these arguments and affirm Chaney's convictions and sentences.

## I. BACKGROUND

Evidence at trial, held November 4-10, 1997, established that Sullivan Chaney was part of an extensive crack distribution ring operating in Oklahoma and Kansas. Chaney and Derrick Kirtman were tried together; Kevin Cole and numerous other indicted coconspirators pled guilty to various charges and testified in exchange for leniency.

The evidence established the following facts. Kirtman and Cole, half-brothers, organized and directed a group that shipped both crack cocaine and powder cocaine (which they later converted to crack) from several locations, including Texas and California. Between 1993 and 1997, the group distributed multiple kilograms of crack. Chaney was involved in this trafficking from at least 1995 to 1997. The organization utilized apartments and houses in various areas

as "crack houses" or "traps," where crack was both sold and used on a regular basis. Distributors each handled thousands of dollars a day, funneling money back to Kirtman and Cole.

During the existence of this drug trafficking operation, members had repeated encounters with police, and several spent time in jail. The group used violence to enforce order, and on one occasion, in April 1996, savagely beat a distributor who was suspected of having stolen money and drugs, permanently disfiguring him (Chaney was not present at this particular incident). The group also employed several minors for extended periods of time. Early in 1997, law enforcement officers put an end to the illegal operation, and eventually seven members were indicted for assorted drug trafficking offenses.

According to numerous witnesses, Chaney's involvement in the operation consisted primarily of distributing drugs to crack houses and street dealers, and in driving Derrick Kirtman and others to various locations to distribute crack. Chaney also leased a house which was used for organizational meetings, from which police recovered money, guns, and other evidence related to drug trafficking.

## II. DISCUSSION

### A. Motion to Suppress Videotape

Chaney argues that the district court erred in denying his pretrial motion to suppress a videotape which the government had in its possession but did not disclose to the defense until approximately two weeks before trial. The videotape in question showed Chaney's involvement in a drug transaction with a government informant. The government concedes that the tape should have been provided to the defense several months earlier, pursuant to a motion under Fed. R. Crim. P. 16.

We review the district court's decision not to impose sanctions under Fed. R. Crim. P. 16 for abuse of discretion. See United States v. McClelland, 141 F.3d 967, 972 (10th Cir. 1998). We look to three factors: (1) the reason for delay, including the existence of bad faith on the part of the government; (2) prejudice to the defendant caused by the government's delay; and (3) the feasibility of a continuance to cure any prejudice. Id.

Applying these factors, we conclude that the district court was well within its discretion in denying the motion to suppress. First, Chaney has not alleged that the government acted in bad faith, and the prosecutor expressly stated at trial and again asserts on appeal that the delay in disclosing the videotape was inadvertent. Second, Chaney has never established, either at trial or on appeal,

any factual basis for his claim that he was prejudiced by the delay. Rather, before the district court and again at oral argument on appeal, counsel for Chaney has made only unelaborated assertions that the delay hampered his preparation for trial, and has been unable to articulate any specific hindrance. Third, Chaney never moved for a continuance. In these circumstances, there is no reversible error. See id.

## B. Objection to Cumulative Evidence

Chaney further contends that the district court should not have allowed the government to play the videotape twice during trial, over his objection, because the second playing only emphasized the tape unduly, needlessly prejudicing him through the presentation of cumulative evidence. See Fed. R. Evid. 403. The district court has broad discretion in applying Rule 403. See United States v. Burch, 153 F.3d 1140, 1144 (10th Cir. 1998). We will reverse only for an abuse of that discretion. See United States v. Castillo, 140 F.3d 874, 884 (10th Cir. 1998).

The videotape in question showed Chaney, Katy Matthews, and Curtis Hubbard selling drugs to a confidential informant and to a law enforcement officer, in the informant's apartment. The videotape was first shown during the informant's testimony. The prosecution interrupted the playing of the tape

numerous times so that the informant could answer questions about the tape. The informant identified the persons portrayed, explained what was happening, and provided additional contextual information. Later, the videotape was replayed during the testimony of Curtis Hubbard, and the prosecution again interrupted the tape to ask questions. Hubbard identified the persons on the tape, testified that certain portions of the transcript of the tape matched what he had heard, explained what certain statements referred to, and told what happened after the events depicted on the tape.

Upon review of the record, we conclude that the district court was within its discretion in allowing the second playing of the videotape. Although Hubbard's testimony regarding the videotape overlapped somewhat with that of the informant, each gave unique explanations of events depicted on the tape and of the circumstances surrounding those events. The differences between the testimony of Hubbard and that of the informant support the court's decision to allow the second showing.

## C. Jury Instruction on Drug Addict Credibility

Chaney contends that the district court erred in refusing to give an instruction warning the jury regarding the credibility of drug addicts. The court gave instead, over Chaney's objection, a general coconspirator / plea agreement

credibility instruction which included a reference to drug addicts.  In reviewing challenges to a jury instruction to which objection was made at trial, we examine the instructions as a whole, de novo, to determine whether the jury was misled. See United States v. Mullins , 4 F.3d 898, 900 (10th Cir. 1993).  So long as the jury was not misled, instructional errors are not reversible.      See id.

Numerous coconspirators who testified at trial pursuant to plea agreements or promises of dropped charges stated that they had either used or been addicted to illegal drugs.  Gina Nicholson and Glendale King each stated on cross-examination that they were addicted to crack cocaine during the time about which they testified.   See Trial Transcript (Tr.) Vol. II at 195-96, 236.  Nicholson also testified as follows:

| [Counsel for Chaney]: | You say you smoke a [sic] $100 worth of crack a day; is that right? |
|---|---|
| [Nicholson]: | Basically, yes. |

Tr. Vol. II at 211.  She stated on recross:

| [Counsel for Kirtman]: | How old are you? |
|---|---|
| [Nicholson]: | Twenty-eight. |
| [Counsel for Kirtman]: | How long have you been hooked on drugs? |
| [Nicholson]: | Since I was 18. |

Tr. Vol. II at 217.  Glendale King testified that he had not used illegal drugs since April 1996.  Tr. Vol. II at 242.  Fedrick Boyd testified that up to nine months

-7-

before trial, he used half an ounce of marijuana a day.  Tr. Vol. IV at 523.

Angela Cullom testified to daily use of crack until a year and a half before trial.

Tr. Vol. III at 484, 492-93.  Shakela Lewis testified to daily marijuana use since

high school.  Tr. Vol. IV at 543, 545.

Chaney requested the following instruction regarding the testimony of such

witnesses:

CREDIBILITY OF WITNESSES–DRUG ABUSERS.

You have heard the testimony of witnesses who have admitted using
controlled substances during the time about which they testified.  The
testimony of a drug abuser must be examined and weighed by the
jury with greater care than the testimony of a witness who does not
abuse drugs.  A drug addict may have a constant need for drugs, and
for money to buy drugs, and may have a greater fear of imprisonment
because his or her supply of drugs may be cut off.  You must
determine whether the testimony of a drug abuser has been affected
by drug use or the need for drugs.

R. Vol. I, Tab 116 at 2.  The court refused this instruction, reasoning that there

was, in its judgment, "no evidence that any of these witnesses are present addicts"

and no "evidence that would indicate that . . . their fear of not getting a

continuation of drugs because of incarceration, would influence their testimony."

Tr. Vol. V at 695-96.  Instead, the court gave the following instruction:

ACCOMPLICE / CO-DEFENDANT / PLEA AGREEMENT

The testimony of some witnesses must be considered with
more caution than the testimony of other witnesses.

An example of a witness whose testimony you should consider cautiously is a witness who was using addictive drugs during the time he or she testified about.

Also, other witnesses whose testimony should be considered with caution are those persons named in the Superseding Indictment, and other witnesses with whom the government has entered into plea agreements which provide for some advantage or favorable treatment on behalf of that witness. Plea bargaining is lawful and proper, and is expressly provided for in the rules of the Court. However, a witness who hopes to gain more favorable treatment in his or her own case may have a reason to make a false statement because such witness may want to strike a good bargain with the government.

So, while such witnesses may be entirely truthful when testifying, you should consider the testimony of these witnesses with more caution than the testimony of other witnesses.

Also, the fact that a witness may have plead [sic] guilty to a crime charged in the Superseding Indictment is not evidence, in and of itself, of the guilt of any other person, including the defendants.

R. Vol. I, Tab 119. The court also gave a general credibility instruction, including a warning about witnesses who "have any particular reason not to tell the truth" or who "have a personal interest in the outcome of the case." Id.

"While as a general rule, prudence dictates the giving of an addict instruction whenever the prosecution has relied upon the testimony of a narcotics addict, whether refusal to so instruct is reversible error depends on the particular facts of each case." United States v. Cook, 949 F.2d 289, 294 (10th Cir. 1991) (quoting United States v. Smith, 692 F.2d 658, 661 (10th Cir. 1982)) (internal quotes and alterations omitted). As the district court here recognized, there are at least two reasons for warning the jury about the testimony of drug addicts: (1) a drug addiction during the time about which the witness testified may have

-9-

impaired the witness' perception or memory; (2) an addiction at the time of testimony may motivate the witness to give false testimony in order to avoid incarceration and the resulting interruption of the witness' drug supply.      Cf. Cook, 949 F.2d at 295 n.1.

The district court's warning about any "witness who was using addictive drugs during the time he or she testified about" was plainly sufficient to alert the jury to the first problem, the witness' perception or memory.  Chaney's requested instruction would have dealt specifically with the second problem, and we approved of such an instruction in similar circumstances in      Smith.  Here "prudence dictate[d]" the giving of this instruction, because it was at least implied that some of the witnesses had present addictions, especially Nicholson and Lewis.  We have never required in addition to such testimony a particularized showing of the witness' fear of incarceration; this is a reasonable inference from the mere fact of the addiction.

However, looking to the "particular facts" of this case, we conclude, as we did in Smith, Cook, and United States v. Nicholson  , 983 F.2d 983 (10th Cir. 1993), that the failure to give the requested instruction was not reversible error. Several factors present in those cases are also present here.  First, the district court gave other instructions which alerted the jury to possible problems with the witnesses' credibility, including its warning about testimony covering periods in

which a witness used drugs, and a general credibility instruction cautioning about motives of personal advantage. Second, the witnesses' drug use was fully explored during their testimony. Third, the witnesses' testimony was corroborated by that of many other witnesses. See Nicholson , 983 F.2d at 991-92; Cook , 949 F.2d at 294-95; Smith , 692 F.2d at 660-61.

We realize that the law presents defense counsel with something of a dilemma here. The witnesses' cross-examination testimony provided the necessary factual basis for the requested instruction, yet we conclude that partly because of this same cross-examination, the jury was not misled and the instruction was not necessary. Cognizant of this dilemma, we nevertheless believe that in this case the jury was adequately apprised of the credibility problems of these witnesses. Not only did the district court mention drug addicts specifically, but so many witnesses testified about plea agreements and drug use that the jury was well aware that there were serious credibility issues. Having reviewed the record, we believe that the jury simply resolved these issues in favor of the government due to the volume and consistency of the testimony.

**D. Weapons Possession Enhancement**

Chaney argues that there was no evidence to support the enhancement of his sentence under Sentencing Guideline § 2D1.1, which provides for an offense

-11-

level increase of two points "[i]f a dangerous weapon (including a firearm) was possessed" during a drug conspiracy. USSG § 2D1.1(b)(1) (1997). We review factual findings under USSG § 2D1.1(b)(1) for clear error; we give due deference to the application of the Guidelines to the facts; we review purely legal questions de novo. United States v. Vaziri, __ F.3d __, 1999 WL 3638, at *11 (10th Cir. Jan. 6, 1999).

"The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, comment., (n.3) (1997). The government has the initial burden of proving possession by a preponderance of the evidence. It may do so by showing "mere proximity to the offense." See United States v. Smith, 131 F.3d 1392, 1400 (10th Cir. 1997); United States v. Roberts, 980 F.2d 645, 647 (10th Cir. 1992). The sentencing court may "attribute to a defendant weapons possessed by his codefendants if the possession of weapons was known to the defendant or reasonably foreseeable by him." United States v. McFarlane, 933 F.2d 898, 899 (10th Cir. 1991).

Here, the government met its burden by showing that firearms were recovered from a "crack house" which Chaney leased and which was used by members of the drug conspiracy, including Chaney, for organizational meetings.

In addition, the presentence report indicates that it was well known within the conspiracy (and therefore at least foreseeable to Chaney, who was extensively involved in the conspiracy) that several members carried firearms during drug trafficking.

With the government's initial burden met, "[t]he enhancement is then appropriate unless the defendant proves the exception–that it is clearly improbable the weapon was connected with the offense." Smith, 131 F.3d at 1400. Chaney has produced no such evidence. Therefore we uphold the district court's enhancement.

### E. United States v. Singleton

Chaney contends that the government presented testimony from witnesses who had been promised leniency, in violation of 18 U.S.C. § 201(c)(2). Our recent en banc decision in United States v. Singleton, __ F.3d __, 1999 WL 6469 (10th Cir. Jan. 8, 1999), forecloses this argument.

Accordingly, Chaney's convictions and sentences are AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

-13-