**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES FLOYD CLEAVER,

Defendant-Appellant.

No. 03-1510
(D.C. No. 01-CR-395-M)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, Circuit Judge, **HOLLOWAY**, Senior Circuit Judge, and
**LUCERO**, Circuit Judge.

Defendant-Appellant James Floyd Cleaver appeals[1] his convictions for

1) destroying government property by fire, in violation of 18 U.S.C.

---

[*]     This Order and Judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]     This court granted the Government's motion to consolidate this
appeal with the appeal of Cleaver's co-defendant, Jack Dowell, No. 03-1341.  We
address Dowell's appeal in a separate opinion.

§ 844(f)(1) & (2)[2]; 2) forcibly interfering with IRS employees and administration, in violation of 26 U.S.C. § 7212(a)[3]; 3) suborning perjury, in violation of

---

[2]    Title 18, U.S.C. § 844(f) provides that

(1) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance, shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

(2)  Whoever engages in conduct prohibited by this subsection, and as a result of such conduct, directly or proximately causes personal injury or creates a substantial risk of injury to any person, including any public safety officer performing duties, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both.

[3]    Title 26, U.S.C. § 7212(a) provides that

[w]hoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or by threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both.  The term "threats of force," as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family.

18 U.S.C. § 1622[4]; and 4) tampering with a witness, in violation of 18 U.S.C. § 1512.[5] Cleaver also asserts that he is entitled to resentencing under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). Having jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we AFFIRM Cleaver's convictions as well as his sentence.

## I.    FACTS

Cleaver devised a plan to set fire to the Colorado Springs office of the Internal Revenue Service ("IRS"). He got several members of his "constitutional law group" to help him carry out the plan, including Ronald Sherman and cousins Jack and Thomas Dowell.

On May 3, 1997, the group met at a Colorado Springs bar at approximately 10:00 p.m. From there, Sherman drove the group to the IRS building and dropped them off. Jack Dowell served as lookout, while Cleaver and Thomas Dowell broke into the building and then forced their way into the IRS office. There, they opened all the unlocked filing cabinets and poured gasoline over the files and throughout the rest of the office. Cleaver then set the fire.

---

[4]    Title 18, U.S.C. § 1622 provides that "[w]hoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned not more than five years, or both."

[5]    Title 18, U.S.C. § 1512(a)(2)(A) makes it a crime to "use[] physical force or the threat of physical force against any person, or attempts to do so, with intent to . . . influence, delay, or prevent the testimony of any person in an official proceeding."

When federal agents began investigating the fire, Cleaver was one of the main suspects. When questioned, he told authorities that he had spent the night of the fire with Thomas Shaffer[6] and Ron Sherman at Shaffer's home, and that later in the evening the group had met Jack and Thomas Dowell at a pool hall. Afterwards, according to Cleaver, he went to several bars with Jack Dowell, and then took his wife for a late dinner.

Shaffer corroborated Cleaver's alibi. Shaffer also testified before the grand jury investigating the fire, but only after Cleaver told him that Cleaver "could not guarantee [Shaffer's] safety if you change your story now."

Approximately four years after the fire, Shaffer decided to cooperate with authorities, despite Cleaver's threats against both Shaffer and his wife. Ronald Sherman also decided to cooperate.

The Government indicted Jack and Thomas Dowell and Cleaver in 2001. The district court tried these defendants separately. A jury convicted Cleaver on four counts: 1) destroying government property by fire; 2) forcibly interfering with IRS employees and administration; 3) suborning Shaffer's perjury before the grand jury; and 4) tampering with a witness by threatening Shaffer. The district court sentenced Cleaver to 400 months in prison. Cleaver appeals his four convictions, as well as his sentence.

---

[6] The record refers to this witness as both Shafer and Shaffer.

## II. ISSUES

**A.** **Whether the district court erred when it refused to exclude the testimony of Government witnesses Thomas Shaffer, Scott Marshall and Russell Frederick, or instead failed <u>sua</u> <u>sponte</u> to continue the trial.**

Cleaver argues that the district court erred in not precluding the Government from calling Thomas Shaffer, Scott Marshall and Russell Frederick as witnesses against Cleaver because Cleaver did not receive recordings of his taped conversations with these three witnesses until one week before trial. Originally, the trial court had planned to try the first two counts against Cleaver, the counts stemming from the arson at the IRS office, together with similar counts charged against Thomas Dowell. The court then planned to try Cleaver separately on the third and fourth counts charged against him, the counts stemming from his soliciting and coercing Shaffer to commit perjury. In light of this arrangement, the parties agreed that Shaffer, Marshall and Frederick would not be called as witnesses during the joint Cleaver/Thomas Dowell trial.

On May 29, 2003, however, four days before the district court was set to try Thomas Dowell and Cleaver jointly, the district court granted the joint motion of the Government and Thomas Dowell to sever Thomas Dowell's trial from Cleaver's trial, in light of a <u>Bruton</u> problem that had just surfaced.[7] Cleaver's

---

[7] <u>Bruton v. United States</u>, 391 U.S. 123 (1968), "held that the

(continued...)

5

trial, therefore, was postponed for almost two months, until July 28, 2003.

Although the parties had originally agreed they would not call Shaffer, Marshall and Frederick during the joint Thomas Dowell/Cleaver trial, after the trial court severed Cleaver's trial, the Government indicated that it intended to call these three witnesses during Cleaver's July 28 trial, which would now include all four counts charged against him.

The Government, eighteen months earlier, had turned over to defense counsel the transcripts and recordings of the audiotaped conversations between Cleaver and these three witnesses. Cleaver, who was now representing himself, had the transcripts of those conversations, but he had never received the actual recordings from his former defense attorney. Therefore, on July 3, 2003, the Government delivered a second copy of the recordings to Cleaver at the federal detention center where he was being held. Prison officials, however, failed to deliver those recordings to Cleaver until July 21, 2003, just a week before his trial was scheduled to start. Cleaver, therefore, filed a motion asking the trial court to exclude these witnesses' testimony. The district court denied Cleaver's motion, holding that Cleaver still had sufficient time to prepare for trial. Cleaver's trial

---

[7](...continued)
admission in evidence of a co-defendant's confession inculpating the defendant at a joint trial at which the co-defendant does not testify violates the defendant's Sixth Amendment right to confront witnesses against him." United States v. Sarracino, 340 F.3d 1148, 1159-60 (10th Cir. 2003).

began as scheduled, on July 28, 2003. Marshall, Shaffer and Frederick testified against Cleaver during the trial. The Government also sought to offer into evidence one recorded conversation between Marshall and Cleaver, but the Government was ultimately unable to do so because of technical difficulties.

Based on these events, Cleaver now asserts on appeal that the district court erred in three ways: 1) the district court abused its discretion in refusing <u>sua sponte</u> to order the trial's continuance; 2) the district court deprived Cleaver of due process by allowing the Government to call these witnesses at trial; and 3) the district court abused its discretion in refusing to strike these witnesses as a discovery sanction against the Government. We conclude Cleaver is not entitled to relief on any of these bases.

### 1.    Refusing <u>sua</u> <u>sponte</u> to order a continuance.

Cleaver never requested that the district court continue the trial so that he could have more time to review these recordings. Rather, Cleaver sought only to have the district court exclude these witnesses's testimony. Cleaver now argues that the district court should have <u>sua</u> <u>sponte</u> granted him a continuance.

Ordinarily we would review the district court's decision not to grant a continuance for an abuse of discretion. <u>See</u> <u>United States v. Dowlin</u>, 408 F.3d

7

647, 663 (10th Cir. 2005).  But because Cleaver never requested a continuance,[8] we review the district court's failure to order one <u>sua</u> <u>sponte</u> only for plain error. <u>See</u> Fed. R. Crim. P. 52(b); <u>see also</u> <u>United States v. Carrera</u>, 259 F.3d 818, 824 (7th Cir. 2001); <u>United States v. Kizzee</u>, 150 F.3d 497, 501 (5th Cir. 1998). "Under that test, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." <u>United States v. Cotton</u>, 535 U.S. 625, 631 (2002) (quotations, alterations omitted).  "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." <u>Id.</u> (quotations, alterations omitted).

Here, there was no plain error.  Cleaver does not dispute that he had the transcripts of these recordings from which to prepare for trial for eighteen months.  And he knew two months before his trial that the Government intended to call these witnesses to testify against him.  Further, Cleaver had the actual recordings a week prior to trial.  Finally, the Government sought to play only one

---

[8]     At the time that the district court severed Cleaver's trial from that of Thomas Dowell, the court postponed Cleaver's trial for two months.  Cleaver's argument on appeal, however, is that the trial court should have <u>sua</u> <u>sponte</u> granted him another delay in light of his July 21, 2003, motion to strike these three witnesses.

recorded conversation between Cleaver and Marshall for the jury, but was unable to do so because of technical difficulties.

And even if we could say there had been plain error, which we cannot, any such error did not affect Cleaver's substantial rights. Cleaver was able to cross-examine these witnesses at trial. He does not assert now how he might have better cross-examined them or what he could have done differently at trial if he had had the actual recordings for a longer period of time before trial.

Cleaver, therefore, has failed to meet his burden of establishing that the district court's failure to continue his trial <u>sua</u> <u>sponte</u> amounted to plain error that affected his substantial rights. <u>Cf.</u> <u>United States v. McHorse</u>, 179 F.3d 889, 904 (10th Cir. 1999) (holding district court did not abuse its discretion in denying continuance where defendant was unable to show he had been prejudiced by that denial).

### 2. Denial of due process.

Cleaver also argues that the trial court's decision to refuse to strike these three Government witnesses or <u>sua</u> <u>sponte</u> to continue the trial deprived him of due process. This court reviews Cleaver's due process argument <u>de</u> <u>novo</u>. <u>See</u> <u>United States v. Nichols</u>, 169 F.3d 1255, 1267 (10th Cir. 1999). In considering whether the trial court's decision to deny a continuance deprived the defendant of a fair trial, "this court focuses on the [defendant's] need for the continuance and

9

the prejudice or lack of prejudice resulting from its denial." Lucero v. Kerby, 133 F.3d 1299, 1309 (10th Cir. 1998) (quotation omitted) (addressing issue asserted in habeas petition). Cleaver has failed to show that he was prejudiced by the district court's refusal either to strike these three witnesses or sua sponte to continue the trial. For the same reasons discussed above, therefore, we conclude that the district court did not deprive Cleaver of due process or a fair trial.

### 3. Discovery sanction.

Finally, relying on Fed. R. Crim. P. 16, Cleaver argues that the district court should have precluded the Government's use of these three witnesses as a discovery sanction. This court reviews the district court's decision denying Cleaver's motion to strike these witnesses as a discovery sanction only for an abuse of discretion. See United States v. Golyansky, 291 F.3d 1245, 1249 (10th Cir. 2002); United States v. McClelland, 141 F.3d 967, 972 (10th Cir. 1998).

Rule 16 addresses discovery in criminal proceedings. Rule 16(a)(1)(B)(i) specifically requires the Government,

> [u]pon a defendant's request, . . . [to] disclose to the defendant, and make available for inspection, copying or photographing . . . any relevant written or recorded statement by the defendant if: the statement is within the government's control; and the attorney for the government knows – or through due diligence could know – that the statement exists.

The criminal rules "give trial courts broad discretion in imposing sanctions on a party who fails to comply with a discovery order." United States v. Peveto,

10

881 F.2d 844, 863 (10th Cir. 1989) (citing Rule 16(d)(2)). For example, Rule 16(d)(2)(C) provides that "[i]f a party fails to comply with this rule, the court may . . . prohibit that party from introducing the undisclosed evidence." See also United States v. Charley, 189 F.3d 1251, 1261 (10th Cir. 1999). However, "it would be a rare case where, absent bad faith, a district court should exclude evidence." Sarracino, 340 F.3d at 1170 (quotation omitted); see also Charley, 189 F.3d at 1261 (addressing exclusion of Government's expert witness).

Here, no sanctions were warranted because the Government complied with its discovery obligations. The Government turned over to the defense the transcripts and recordings of these conversations eighteen months before trial. Cleaver does not dispute that he had the transcripts of the recordings. The Government turned the recordings over to Cleaver a second time after he was unable to get them from his previous defense attorneys. The Government, therefore, did not violate any discovery order. No sanctions were warranted.

Even if there was a discovery violation, there is no need for a sanction if the violation did not prejudice the defendant. See Charley, 189 F.3d at 1262. And here, as we have discussed, Cleaver was not prejudiced by not having the actual recordings of these conversations earlier. The district court, therefore, did not abuse its discretion in refusing to strike these three Government witnesses as a discovery sanction.

11

**B. Whether the district court erred in denying Cleaver's motion to strike Ronald Sherman's testimony.**

Prior to trial, Cleaver filed a motion seeking to strike Sherman's testimony because it would not be voluntarily given. The district court denied that motion. Cleaver now argues that decision was error.

The question of voluntariness ultimately "is a question of law subject to de novo review, although specific underlying findings of fact are reviewed for clear error." United States v. Gonzales, 164 F.3d 1285, 1289 (10th Cir. 1999) (reviewing due process claim challenging voluntariness of witness's confession). In this case, the district court did not make any factual findings, so we review the district court's decision de novo.

Cleaver has standing to challenge the voluntariness of Sherman's testimony. See Clanton v. Cooper, 129 F.3d 1147, 1157-58 (10th Cir. 1997) (42 U.S.C. § 1983 action); see also Gonzales, 164 F.3d at 1289. "[T]he standard for determining whether a statement was voluntary is the same whether we are dealing with a defendant or a third-party witness." Gonzales, 164 F.3d at 1289 n.1.

> A statement is involuntary if the government's conduct cause[d] the [witness's] will to be overborne and his capacity for self-determination critically impaired. In determining whether a statement was freely and voluntarily given, the courts consider the totality of the circumstances. The relevant circumstances embrace both the characteristics of the accused and the details of the interrogation. Relevant factors include the [witness's] age,

12

intelligence, and education, the length of detention and questioning, the use or threat of physical punishment, whether <u>Miranda</u> warnings were given, the accused's physical and mental characteristics, the location of the interrogation, and the conduct of the police officers.

<u>Id.</u> at 1289 (citations, quotations omitted).

Relying on Sherman's testimony at Jack Dowell's earlier trial, as well as Sherman's testimony at a pretrial hearing on Cleaver's motion to suppress, Cleaver argued to the district court that federal agents had coerced Sherman's cooperation by talking to Sherman a number of times after the fire, telling Sherman they believed he was involved in the crime and that, as a result, he could be sentenced to forty years in prison, and playing on Sherman's general fear of the Government. Those allegations are not sufficient to suggest that federal agents overbore Sherman's will and coerced his cooperation. The district court, therefore, did not err in denying Cleaver's motion to strike Sherman's testimony.[9]

---

[9] On appeal, Cleaver also argues that the district court erred in not conducting an evidentiary hearing on the voluntariness of Cleaver's cooperation. Cleaver, however, never requested an evidentiary hearing; rather, in support of his motion Cleaver relied solely on Sherman's testimony during Jack Dowell's earlier trial and the pretrial hearing on Cleaver's suppression motion. Therefore, we review this argument only for plain error. <u>See</u> Fed. R. Crim. P. 52(b); <u>see also</u> <u>United States v. Gerber</u>, 24 F.3d 93, 95 (10th Cir. 1994) (applying plain-error review where defendant failed to request evidentiary hearing). In this case, there was no plain error warranting relief. Cleaver would not be entitled to an evidentiary hearing unless he showed "a serious factual dispute" existed. <u>LaFrance v. Bohlinger</u>, 499 F.2d 29, 36 (1st Cir. 1974). However, for the same reasons that the district court did not err in denying Cleaver's motion to exclude Sherman's testimony, as discussed above, Cleaver failed to present sufficient

(continued...)

**C.** **Whether the district court abused its discretion in allowing the Government to introduce a fuse box top into evidence.**

In July 2001, federal agents found the top of a box for a fuse among Cleaver's belongings that he was storing at an acquaintance's home. Before trial, Cleaver filed a motion in limine seeking to exclude this fuse box top from evidence, arguing it was irrelevant and unduly prejudicial and thus, inadmissible under Fed. R. Evid. 402 and 403.[10] The district court denied that motion. Cleaver also unsuccessfully objected at trial when the Government offered the fuse box top into evidence. Cleaver now appeals the district court's decision to admit the fuse box top into evidence.

This court "review[s] a district court's evidentiary rulings for an abuse of discretion." United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003). "[W]e will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a

---

[9](...continued)
evidence to create a "serious factual dispute" suggesting that Sherman's cooperation was involuntary.

[10]      Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid 402. And even if evidence is "relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

clear error of judgment." United States v. Mitchell, 113 F.3d 1528, 1531 (10th Cir. 1997) (quotation omitted).

After reviewing the record, we cannot conclude that the district court abused its discretion in admitting this evidence. The fuse box top was clearly relevant. Cleaver had mentioned a timing device to Sherman as the group drove to the IRS building on the night they set the fire. And after the fire, Cleaver told Scott Marshall that he had used a detonator to set the fire. The district court, therefore, did not abuse its discretion in admitting the fuse box top into evidence.

**D.     Whether Cleaver is entitled to resentencing under Booker.**

Finally, relying on Blakely v. Washington, 542 U.S. 296 (2004), and now Booker, Cleaver asserts that he is entitled to resentencing because the court, and not the jury, found the facts necessary to support the district court's application of the terrorism enhancement, U.S.S.G. § 3A1.4, by a preponderance of the evidence. Booker requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the statutory maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. Because Cleaver raised this argument at sentencing,[11] we review the issue de novo. See

_____

[11]     Cleaver raised this issue at sentencing, prior to the Supreme Court's deciding either Blakely or Booker. In raising this argument before the district

(continued...)

15

<u>United States v. Stiger</u>, 413 F.3d 1185, 1191 (10th Cir.), <u>cert. denied</u>, 2005 WL 3144402 (2005).

The Government concedes that the district court's application of the terrorism enhancement violated the Sixth Amendment and warrants resentencing. We are not, however, bound by the Government's concession and instead, in an effort to use judicial resources most efficiently, we will conduct our own independent review of the record. See <u>United States v. Resendiz-Patino</u>, 420 F.3d 1177, 1182 (10th Cir. 2005) (disregarding Government's concession of constitutional <u>Booker</u> error). After independently considering the question, we affirm Cleaver's sentence.

**1. Whether applying the terrorism enhancement violated the Sixth Amendment.**

In this case, the terrorism enhancement applies if Cleaver's offense, destroying government property by fire,[12] "is a felony that involved . . . a federal crime of terrorism." U.S.S.G. § 3A1.4(a). The Guidelines further define "[f]ederal crime of terrorism" by referring to 18 U.S.C. § 2332b(g)(5), see U.S.S.G. § 3A1.4, app. n. 1, which in turn defines "[f]ederal crime of terrorism" to

---

[11](...continued)
court, therefore, Cleaver relied upon <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

[12] Pursuant to U.S.S.G. § 3D1.3(a), the district court calculated Cleaver's sentence based upon his conviction under 18 U.S.C. § 844(f) for destroying government property by fire.

be an offense that "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and" that violates one of a number of specified federal statutes, including 18 U.S.C. § "844(f)(2) or (3) (relating to arson and bombing of Government property risking or causing death)." For the terrorism enhancement to apply in this case, then, Cleaver's offense must have involved an offense 1) "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;" and 2) that violated 18 U.S.C. § 844(f)(2).[13] Because the jury's verdict encompassed these two factual findings, the district court did not violate the Sixth Amendment by applying the terrorism enhancement.

First, in order for the terrorism enhancement to apply, Cleaver's offense

---

[13] Cleaver does not argue that there are any additional elements that the Government is required to prove before the district court can apply the terrorism enhancement. Cleaver's co-defendant, however, did argue that the Government also had to prove that the offense "risked or caused death." Dowell derives this third element from 18 U.S.C. § 2332b(g)(5)(B)(i)'s parenthetical following that section's reference to § 844(f)(2): "the term 'Federal crime of terrorism' means an offense that . . . is a violation of . . . 844(2) or (3) (relating to arson and bombing of Government property *risking or causing death*)." 18 U.S.C. § 2332b(g)(5)(B)(i) (emphasis added). For the same reasons that we have set forth in our opinion addressing Dowell's appeal, United States v. Dowell, No. 03-1341, we reject any claim that the Government also had to prove that the offense "risked or caused death." Section 2332b(g)(5)(B)(i)'s parenthetical is merely a shorthand summary of the offenses set forth in § 844(f)(2) and (3). Cf. United States v. Graham, 275 F.3d 490, 517-18 (6th Cir. 2001) (looking to elements of underlying offense listed in § 2332b(g)(5)(b)(i), rather than language of § 2332b(g)(b)(i)'s parenthetical).

17

must have involved an offense "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." U.S.S.G. § 3A1.4, app. n. 1; see also 18 U.S.C. § 2332b(g)(5). The jury made this factual finding beyond a reasonable doubt when it convicted Cleaver of interfering with the IRS.

Second, in order for the terrorism enhancement to apply, the jury had to find beyond a reasonable doubt that Cleaver's offense involved violating § 844(f)(2). See U.S.S.G. § 3A1.4, app. n. 1; 18 U.S.C. § 2332b(g)(5)(B)(i). The jury specifically made this factual finding beyond a reasonable doubt when the jury convicted Cleaver of violating § 844(f)(2).[14] The jury thus made the two factual findings necessary to support applying the terrorism enhancement and therefore the district court's application of the terrorism enhancement did not violate the Sixth Amendment.

### 2. Whether the district court's non-constitutional <u>Booker</u> error warrants resentencing.

The district court did commit non-constitutional <u>Booker</u> error when, in imposing Cleaver's sentence, the court treated the federal sentencing guidelines as mandatory rather than discretionary. See <u>United States v. Gonzalez-Huerta</u>, 403

---

[14] Although the Government charged Cleaver with violating 18 U.S.C. § 844(f)(1) and (2), the jury specifically convicted Cleaver of violating § 844(f)(2) when it found, by special interrogatory, that his "conduct create[d] a substantial risk of injury to others."

18

F.3d 727, 731 (10th Cir.) (en banc), <u>cert. denied</u>, 126 S. Ct. 495 (2005). Because Cleaver adequately preserved his <u>Booker</u> arguments at sentencing, we review this error under Fed. R. Crim. P. 52(a). Rule 52(a) provides that "[a]ny error . . . that does not affect substantial rights must be disregarded." "In non-constitutional harmless error cases, such as this, the government bears the burden of demonstrating, by a preponderance of the evidence, that [Cleaver's] substantial rights were not affected." <u>United States v. Martinez</u>, 418 F.3d 1130, 1135-36 (10th Cir. 2005), <u>pet. for cert. filed</u>, (U.S. Nov. 10, 2005) (No. 05-7524). "An error with respect to sentencing does not affect substantial rights when it did not affect the sentence imposed by the district court." <u>United States v. Paxton</u>, 422 F.3d 1203, 1207 (10th Cir. 2005) (citation omitted).

Here, the applicable guideline range was 360-480 months. The district court imposed a 400-month sentence, which fell in the middle of that range. Even treating the guidelines as mandatory, the district court had the discretion to impose a sentence anywhere in the applicable guideline range. In this case, the district court exercised that discretion to impose a sentence in the middle of the range. The court could have imposed a lower sentence, but chose not to do so. "When the district court had undoubted discretion to reduce the sentence below what it imposed, its decision not to exercise discretion and impose a lower sentence renders any nonconstitutional <u>Booker</u> error harmless." <u>Paxton</u>, 422 F.3d at 1207

19

(quotation omitted).  In this case, then, "[w]e have no reason to think that the district court would impose a different sentence on remand." Id.  The record thus establishes that the district court's non-constitutional Booker error did not affect Cleaver's substantial rights and was, therefore, harmless.  See id.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM Cleaver's four convictions, as well as his sentence.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

20